**IN THE UNITED STATES DISTRICT COURT FOR DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VICTOR NTAM**<br>1021 51st Street, NE<br>Washington, DC 20019<br><br>*On behalf of himself individually and on behalf of a Class of Similarly Situated Persons.*<br><br>Plaintiff<br><br>*v.*<br><br>**PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC.**<br>1265 Corona Pointe Court, Suite 301<br>Corona, CA  92879<br><u>SERVE ON:</u><br>United Agent Group Inc., Resident/Registered Agent<br>1629 K Street, NW  20006<br>Washington, DC  20006<br><br>Defendant | Civil Case:<br><br>21-1583<br>———————<br><br><br><br><br>***JURY TRIAL DEMAND*** |

---

**CLASS ACTION COMPLAINT**

---

Plaintiff Victor Ntam ("**Ntam**" or  "**Named Plaintiff**"), on his individual behalf and on behalf of a class of similarly situated individuals defined *infra*, by his attorneys, Phillip R. Robinson and the Consumer Law Center LLC and pursuant to Fed.R.Civ.P. 23 (Class Actions), sue Paramount Residential Mortgage Group, Inc. ("PRMG" or "Defendant").  The Plaintiff, on behalf of himself and the class members, demand a trial by Jury on all counts for which a right to trial by jury is allowed and, in support of his Class Action Complaint, states:

## INTRODUCTION

1.      In these instances, such as the underlying matters involving PRMG, the mortgage servicer places its interest and pattern of unsafe and unsound mortgage service practices above the remedial rights of homeowners and consumers.  Moreover, PRMG unfairly and deceptively ignores its statutory and contractual duties including those which were agreed to as part of its license/registration to legally operate in the District of Columbia and nationwide.

2.      These practices are compounded when homeowners, like Ntam and the putative class members, try in good faith to resolve their situation and PRMG disregards its duty to conduct a reasonable investigation of their notices of error and makes material misstatements of law in reply which confirm the underlying claim in this matter—i.e. that PRMG as a pattern and practice violates its remedial, statutory duty pursuant to Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605(e)(3)("RESPA") which states:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

*Id.*

3.      Under its authority granted to it pursuant to Dodd-Frank legislation, the Consumer Financial Protection Bureau ("CFPB") has further imposed this duty on PRMG and other services in 12 C.F.R. § 1024.35(i)(1)("After receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error").  However, as shown *supra*, PRMG has also failed its mandatory duty to "comply with any other obligation found by the Bureau of Consumer Financial Protection,

by regulation, to be appropriate to carry out the consumer protection purposes of this chapter"
which includes 12 C.F.R. § 1024.35(i)(1).   12 U.S.C.A. § 2605(k)(1)(E).

4.      There is no question that RESPA was intended and is considered remedial legisla-
tion. *See e.g. Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013)("As a remedial
statute, RESPA is construed broadly to effectuate its purposes"); *Medrano v. Flagstar Bank, FSB*,
704 F.3d 661, 665-66 (9th Cir. 2012)("RESPA's provisions relating to loan servicing procedures
should be 'construed liberally' to serve the statute's remedial purpose"). *See also* DODD–FRANK
WALL STREET REFORM AND CONSUMER PROTECTION ACT, PL 111-203, July 21, 2010,
124 Stat 1376.  Dodd-Frank was specifically enacted to "improv[e] accountability and transpar-
ency in the financial system…[and] to protect consumers from abusive financial services prac-
tices." *Id.*

5.      Yet, as a matter of its apparent standard policy and practice, PRMG disregards the
express requirements in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) to cease furnish-
ing or providing adverse information to any consumer reporting agency regarding any payments
or sums demanded due that are subject of the Qualified Written Requests/Notices of Error
("QWR/NOE") received from the Plaintiff and Class members for a period of sixty days.  It simply
continues the disputed, adverse reporting with knowing and reckless disregard to the rights of the
Plaintiffs and Class members.

6.      In response to Ntam's QWR/NOE notice of error that PRMG received on February
19, 2021, as part of its consistent policy, practice and pattern:

       a.      PRMG did not correct its errors related to Ntam's mortgage account and continued
           to claim he owed it sums which he did not owe;

b.  PRMG did not suppress the negative credit reporting information that was in dispute as it was required to do so 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1);

c.  PRMG did not conduct a reasonable investigation into Ntam's inquiry whatsoever and it never responded to Ntam whatsoever except to acknowledge to him in written correspondence dated February 22, 2021 that it received the QWR/NOE and would "promptly review [the] inquiry, complete research, and respond within 30 business days"; and

d.  Notwithstanding its written promises in its February 22, 2021 acknowledgement correspondence, PRMG did not promptly review Ntam's inquiry, complete any research, or respond within 30 business days and instead ignored Ntam's QWR/NOE and continued its incorrect, false, and negative servicing of Ntam's personal mortgage loan.

7.   It is plain legal error for PRMG to disregard its duties under RESPA, i.e., 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).

8.   12 C.F.R. § 1024.35(i)(1) was promulgated by the CFPB in a Final Rule that became effective on January 10, 2014. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01.  In issuing its Final Rule the CFPB explained:

> Industry commenters strongly objected to the 60-day reporting prohibition. Commenters said the proposal undermines the accuracy and integrity of credit reports. One commenter said the Fair Credit Reporting Act already governs credit reporting. One large bank commenter asserted that because credit reporting is a safety and soundness protection, banks have a duty to accurately report delinquencies. Several industry commenters also noted a concern that, based on prior experience, borrowers may use the reporting prohibition to manipulate the system by disputing legitimate delinquencies in order to apply for credit without derogatory marks on credit

reports. The Bureau acknowledges the concerns expressed but notes that Congress specifically imposed the 60-day reporting prohibition with respect to qualified written requests in section 6(e) of RESPA. As discussed above, **the Bureau believes it is necessary to achieve the consumer protection purposes of RESPA, including to ensure responsiveness to borrower requests and complaints and the provision of accurate and relevant information to borrowers, to apply the same procedures to all notices of error as applicable to qualified written requests.** Otherwise, borrowers and servicers must expend wasteful resources parsing the form requirements applicable to qualified written requests and navigating between two separate regulatory regimes. As detailed above, the Bureau believes that the interests of borrowers and servicers are best served and the purposes of RESPA are best met through a single regulatory regime applicable to both qualified written requests and other notices of error. The Bureau is therefore adopting § 1024.35(i)(1) as proposed, as it is consistent with the 60-day reporting prohibition for qualified written requests required by section 6(e) of RESPA.

*Id. at 10752 (emphasis added).*

9.      As a direct and proximate result of PRMG's violations of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Ntam and the class members have been proximately harmed by PRMG's publishing of derogatory information to the credit reporting agencies subject to disputes regarding the borrower's payments and sums claimed due.  It was not permitted as a matter of law to report such information but did so anyway in disregard of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  These damages include statutory damages available pursuant to 12 U.S.C.A. § 2605(f) and non-economic credit damage by reporting negative information to others, including the credit reporting agencies, which PRMG was expressly prohibited from reporting and puts Ntam and the Class members in a false light.

10.     As a further direct and proximate result of PRMG's violations of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.35, Ntam has also been further damaged by PRMG's failure to correct its incorrect servicing records by performing a reasonable investigation of his QWR/NOE and the status of Ntam's mortgage loan.  PRMG's failure to correct its errors and perform any reasonable investigation has caused Ntam economic and non-economic damages in form of lost payments

received and realized by PRMG and its authorized agent(s) which Ntam has not been given credit for having paid, but PRMG has received, as well as emotional damages manifested by anger, anxiety, frustration, and fear that PRMG intends to try to take his home based on false pretenses that he is in default when he is not on his loan obligation.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 since certain of the claims asserted herein arise under the laws of the United States.  The Court also has supplement jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in this Court as the acts and conduct alleged all occurred in the District of Columbia.

## PARTIES

13.      Plaintiff Victor Ntam ("**Ntam**") is a natural person who owns and resides the real property commonly known as 1021 51st Street, NE, Washington, DC  20019 ("Ntam Property"). Ntam has resided at the Ntam Property at all times relevant and material to this action as his personal residence.  Further evidence that the Ntam Property serves as Ntam's home and personal residence includes Ntam's Affidavit of Occupancy executed by him on July 23, 2020 when he acquired the Ntam Property and borrowed the loan from PRMG subject to this action.

14.     Defendant PRMG is a collector and is licensed mortgage servicer in the District of Columbia (NMLS Lic. No. MLB75243).  PRMG is also a California corporation, domiciled in California, with its principal place of business located in the City of Corona, Riverside County, California.

## FACTUAL ALLEGATIONS

### *General Allegations About PRMG's Legal Knowledge*

6

15.     All persons, including licensed mortgage lender/servicers in the District of Columbia like PRMG, are expected to know the law.  As part of its license/registration to even conduct business in the District of Columbia PRMG "shall comply with applicable federal law and any rule, regulation, order, or interpretation promulgated or issued pursuant to the applicable federal law."  D.C. Mun. Regs. tit. 26-C, § 1122.  PRMG "shall [also] act in good faith in the best interest of the borrower."  D.C. Mun. Regs. tit. 26-C, § 1116.5.

16.     Pursuant to 12 U.S.C.A. § 2605(k)(1)(C)(E), PRMG has a duty to the Named Plaintiff and Class members to (i) take appropriate steps to avoid foreclosure as part of its standard servicer's duties and (ii) comply with any other obligation(s) found by the CFPB, by regulation, to be appropriate to carry out the consumer protection purposes of 12 U.S.C.A. § 2605.

17.     Pursuant to 12 C.F.R. § 1024.38(b)(1)(i), PRMG is required to "[p]rovide accurate and timely disclosures to a borrower as required by [12 C.F.R. § 1024.38] or other applicable law."  Pursuant to 12 C.F.R. § 1024.35(b)(5), PRMG is not permitted to "impos[e]… a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."  It is unreasonable and a violation of its duties for PRMG to demand payments and sums, fees and charges from borrowers that it is prohibited from imposing in the first instance by contract and by law.

### Factual Allegations About the Credit Reporting System

18.      In July 2019 the CFPB issued a report, *Building a Bridge to Credit Visibility*, which explained disputed credit reporting can have material impact on vulnerable consumers.

> The ability to access credit is a critical component for families and individuals nationwide to have the opportunity to climb the economic ladder, exercise informed consumer choice, build wealth, and achieve economic stability. During this panel, a panelist representing UnidosUS, a Latino nonprofit organization, explained that access to credit can affect consumers' daily lives in many ways, and often means the difference between economic opportunity and fragility. According to this panelist, access to credit affects where consumers reside, work, and go to school; it may also have lasting generational effects.

*Id.* at Page 7.

19.    Previously the Board of Governors of the Federal Reserve System's 2007 "Report to Congress on Credit Scoring and Its Effects on the Availability and Affordability of Credit" explained:

> Inaccurate data may cause some consumers to pay more, or less, for credit than is warranted by their true circumstances. For the full benefits of the credit-reporting system to be realized, credit records must be reasonably complete and accurate. Yet, under the country's voluntary system of credit reporting, complete information is not always reported to the credit-reporting system. Moreover, data accuracy is an issue under any credit-reporting system. The accuracy of the data affects both credit scoring and judgmental evaluations because both techniques rely on the quality of the information included in credit reports. Judgmental underwriting, which requires a loan officer's individual attention to an application, provides an opportunity to identify inaccuracies that credit scoring does not.

*Id.* at Page 17.

20.    To help address and avoid the specific, negative consequences of continued, negative reporting by mortgage services (similar to those described in the preceding paragraphs) that are subject to borrower QWR/NOEs, Congress and the CFPB enacted a specific tool in the toolbox of rights and remedies in favor of borrowers—i.e. 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  In plain language the CFPB explains the protection to the Plaintiffs and Class members as follows on its website:

> Q. Can my mortgage servicer report negative information about me to a credit-reporting agency after I have sent an error dispute or information request?
>
> > A.  It depends. If your notice of error is in regards to a payment, your servicer can't provide negative information about that payment to any consumer reporting agency or credit bureau for the 60 days after it receives your notice of error.

https://www.consumerfinance.gov/ask-cfpb/can-my-mortgage-servicer-report-negative-information-about-me-to-a-credit-reporting-agency-after-i-have-sent-an-error-dispute-or-information-request-en-209/ (last visited May 24, 2021).

***Factual Allegations Relevant to Named Plaintiff***

21.     On or about July 23, 2020, Ntam acquired the Ntam Property by Deed.

22.     To acquire the Ntam Property for his personal use, Ntam borrowed the sum of $438,866 from PRMG in terms described and agreed in a Note ("Ntam Loan").   The Ntam Loan provided for monthly, periodic payments "beginning on September 1, 2020."  The Ntam Loan terms also provided a 15 calendar day grace period before any late charge would be imposed on the loan.

23.     PRMG is the named lender in the Ntam Loan documents (i.e. Note and Deed of Trust).

24.     As part of the terms and conditions related to the Ntam Loan, PRMG is required to send to Ntam monthly, periodic statements about the Ntam Loan.   From September 2020 through December 3, 2020, PRMG claims to have sent Ntam periodic statements about the Ntam Loan, but for reasons unknown to Mr. Ntam, he never received those statements. In November 2020, Ntam spoke to a PRMG employee who represented that the statements and correspondence issued related to the loan had been returned to PRMG.

25.     Ntam has made all the requirement payments on the Ntam Loan during or before the grace period established in the loan documents.  A summary of these payments is as follows:

| SUMMARY OF PAYMENTS ON THE NTAM LOAN | | | | |
|---|---|---|---|---|
| MONTHLY PAYMENT | CHECK NUMBER | PAYMENT AMOUNT | DATE PAYMENT CLEARED NTAM ACCOUNT | DATE PRMG APPLIED THE PAYMENT |
| September 2020 | 1372 | $2,784.78 | September 9, 2020 | Sept. 3, 2020 |
| October 2020 | 1395 | $2,784.78 | October 8, 2020 | Oct. 5, 2020 |
| November 2020 | 1415 | $2,784.78 | November 17, 2020 | |
| December 2020 | 995001 | $2,784.78 | December 7, 2020 | Dec. 2, 2020 |
| January 2021 | 995002 | $2,784.78 | January 14, 2021 | Jan. 7, 2021 |

| SUMMARY OF PAYMENTS ON THE NTAM LOAN | | | | |
|---|---|---|---|---|
| MONTHLY PAY-MENT | CHECK NUMBER | PAYMENT AMOUNT | DATE PAYMENT CLEARED NTAM ACCOUNT | DATE PRMG APPLIED THE PAYMENT |
| **February 2021** | 995003 | $2,784.78 | February 17, 2021 | Feb. 10, 2021 |
| **March 2021** | 995004 | $2,784.78 | March 15, 2021 | Mar. 10, 2021 |
| **April 2021** | 995005 | $2,784.78 | April 12, 2021 | April 7, 2021 |
| **May 2021** | 995006 | $2,784.78 | May 13, 2021 | May 6, 2021 |

26.     According to some of the payments identified preceding paragraph, PRMG out-sources some of its collection services to Cenlar FSB to process payments received on its behalf. Upon information and belief based on this fact, Plaintiff believes Cenlar is PRMG's authorized agent and vendor it retained, without Ntam's consent, to process payments from borrowers like Ntam.  PRMG is solely responsible for the acts and omissions of its agent(s) and vendors including Cenlar when Cenlar acts on its behalf to collect and process payments.

27.     Notwithstanding Ntam has timely made each of the payments due on the Ntam Loan within the loan's grace period, PRMG is falsely reporting to the credit reporting agencies that he has not and is otherwise delinquent.  For example, as of January 14, 2021, PRMG had reported to the CRAs that Ntam was late 30 days when he in fact was not late.  This derogatory, false reporting put Ntam in a negative light and dropped his credit scores from a rage of 572 (as of January 14, 2021).

28.     Notwithstanding Ntam has timely made each of the payments due on the Ntam Loan with the loan's grace period, PRMG has threatened Ntam with other written, derogatory actions including:

a.     On January 11, 2021, PRMG claimed Ntam was in default and threatened him with potential foreclosure even though he was current on the Ntam Loan.

b.     On January 11, 2021, PRMG again claimed Ntam was in default and threatened him with potential foreclosure even though he was current on the Ntam Loan.

10

c.      On January 19, 2021, PRMG threatened Ntam as being delinquent and it imposed late charges of $100.07 even though he was current on the Ntam Loan.

d.      On February 1, 2021, PRMG claimed Ntam was in default and threatened him with potential foreclosure even though he was current on the Ntam Loan. It also demanded that he pay $5,669.63 in sums that he had already paid to it.

e.      On February 17, 2021, PRMG threatened Ntam as being delinquent and it imposed late charges of $200.14 even though he was current on the Ntam Loan.

f.      On February 18, 2021, PRMG threatened Ntam as being delinquent and it imposed late charges of $200.14 even though he was current on the Ntam Loan.

g.      On April 1, 2021, PRMG threatened Ntam as being delinquent and it imposed late charges of $300.21 even though he was current on the Ntam Loan.

h.      On April 19, 2021, PRMG again threatened Ntam as being delinquent and it imposed late charges of $300.21 even though he was current on the Ntam Loan.

i.      On April 6, 2021, PRMG provided Ntam an inaccurate payoff statement which claimed he was late on his payments and owed it late fees it was not entitled.

j.      On May 3, 2021, PRMG threatened Ntam as being in default and demanded he pay it $5,869.77 in sums he had already paid to it.

k.      On May 18, 2021, PRMG threatened Ntam as being delinquent and it imposed late charges of $400.28 even though he was current on the Ntam Loan.

29.     Because of the problems with mail delivery to the Ntam Property by the United States Postal Service as described in ¶ 24, Ntam utilized his mother's address as the designated mailing address for PRMG and informed him of his decision in this regard. In the correspondence identified in ¶ 28, PRMG utilized that mailing address in its correspondence to Ntam.  So, when

PRMG intends to communicate with Ntam by mail, it is aware and knows the proper mailing address to use.

30.     In its prior correspondence to him, Ntam was routinely invited by PRMG to write to it and notify it of its error(s).  In correspondence dated on or about February 11, 2021, Ntam wrote to PRMG at the address it published for qualified written requests, notices of error, and requests for information pursuant to 12 U.S.C.A. § 2605 and its implementing regulations ("Ntam QWE/NOE/RFI").  PRMG received the Ntam QWE/NOE/RFI correspondence at that designated address on February 19, 2021 but did not substantively respond thereafter.

31.     In the Ntam QWE/NOE/RFI, Ntam notified PRMG of the following errors:

a.     The failure by it to send him each of his periodic, monthly statements.

b.     The failure by it to investigate the hours of phone calls he had previously to dispute PRMG's false, negative credit reporting and accounting of the Ntam Loan.

c.     The failure by it to give him credit for his November 2020 monthly payment which infected his subsequent payments and led to the improper assessment of late fees.  Ntam's QWE/NOE/RFI included evidence of his disputed payments that he was not getting credit for having made (i.e., copies of the checks and other evidence).

d.     The failure by it to properly report his payments to the credit reporting agencies and election instead to report him as late.

32.     In the Ntam QWE/NOE/RFI, Ntam also requested that PRMG take the following actions:

a.     To correct its serving and collection errors.

b.    To "delete or suppress all information furnished to any credit reporting agency concerning any payment claimed to be due on or after November 1, 2020 for at least sixty days after the receipt of [the Ntam QWE/NOE/RFI]."

c.    Provide him an accounting of the Ntam Loan, copies of all documents it reviewed to respond to the Ntam QWE/NOE/RFI, and a payoff quote.

33.    PRMG acknowledged receipt of Ntam's QWR/NOE/RFI by letter dated February 22, 2021, in which it represented that it would fully respond within 30 business days. It later sent another correspondence dated March 24, 2021, in which it represented that it needed 15 additional business days to complete its research (or by April 23, 2021). However, PRMG never sent Ntam a substantive response.

34.    PRMG did not perform a reasonable investigation in response to its receipt of the Ntam QWE/NOE/RFI.  This conclusion is based in part on the following:

a.    PRMG never substantively responded to the Ntam QWE/NOE/RFI except to (i) acknowledge its receipt and notify him of its need for an extension of time to respond and (ii) to provide an inaccurate payoff statement.  No other responses were ever made by it.  It provided no other responses.

b.    PRMG did not suppress and cease any of the derogatory and disputed credit reporting in the sixty day period following its receipt of the Ntam QWE/NOE/RFI.

c.    PRMG did not dispute Ntam's evidence of payments whatsoever.

d.    PRMG did not contact Ntam or his bank to inquire about the evidence he provided it concerning the payments he was not getting credit for, but it had received.

e.    PRMG never sought Ntam's consent to speak to any third party to verify his specific errors which it would have had to do if it actually conducted any reasonable investigation (and he would have so consented if ever asked).

35.    As a direct and proximate result of PRMG's negative and derogatory information reported to the CRAs and also in violation of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), Ntam's creditor Guitar Center/Synchrony Bank (acct. number ending in 0692) closed his account in April 2021 based upon the "Delinquent Or Derogatory Real Estate Secured Loan"

36.    In violation of its mandatory duty pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), PRMG furnished adverse information to the credit reporting agencies known as TransUnion LLC, Equifax Information Services, LLC, and Experian Information Services Inc. regarding payments subject to Ntam QWE/NOE/RFI.  It furnished this adverse information from February 19, 2021 through April 20, 2021 (which were within sixty days of PRMG's receipt of the Ntam QWE/NOE/RFI).

37.    Ntam has been harmed as a result of PRMG's acts and omissions described herein and that harm includes economic and non-economic damages in the form of emotional distress damages manifested by frustration, fear, mental distress, anxiety, and worry.  Ntam's anxiety, mental distress and worry has been demonstrated by his loss of appetite, difficulty sleeping, weight loss, preoccupation with PRMG and distraction from work. More specifically he reasonably feared PRMG's continued reporting, which it did not cease to report for the sixty days following receipt of the Ntam QWE/NOE/RFI, would negatively impact his continued business which relies upon his personal credit and his standing in the community. Ntam also reasonably feared, due to PRMG's constant threats of foreclosure, that he might arrive at the Property one day only to find

that PRMG had initiated foreclosure proceedings against it. Ntam is also entitled to certain statutory damages under the claims asserted herein.

<u>**CLASS ACTION ALLEGATIONS (LCvR 23.1(a)(1))**</u>

38.    The Named Plaintiff bring certain claims, *infra*, on behalf of a class of similarly situated persons related to Defendant PRMG under Fed.R.Civ.P. 23 ("**PRMG Class**").  The Plaintiffs propose, as the definition of the PRMG Class, that it be defined as follows:

> All residential loan borrowers for whom PRMG received a QWR/NOE in the three years immediately preceding this Class Action pursuant to 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.  Excluded from the class are any borrowers who obtained a discharge under Chapter 7 of the Bankruptcy Code after the date PRMG received their QWR/NOE.

39.    Ntam is the proposed Named Plaintiff for the PRMG Class and qualifies as a member of the PRMG Class.

40.    This action may be maintained as a class action pursuant to Fed.R.Civ.P. 23(b)(3) since the claims involved herein are remedial and individuals are less likely to pursue these claims on an individual basis and a class action would be superior to having multiple, similar methods for fairly and adjudicating the controversy.  In addition, the Named Plaintiff bring certain of his PRMG Class claims solely upon the basis of Fed.R.Civ.P. 23(c)(4) to determine certain issues on a class-wide basis including: The issue of PRMG's liability for actual damages to the PRMG Class members under RESPA (to which they can proceed and pursue in separate individual actions).  By addressing the issue of liability of the Defendant related to identical legal claims and leaving to the class members to prove their individual damages and losses in separate actions, if they so choose, this will also efficiently manage the controversy on an issue (i.e. liability) that can be addressed at one time and in one forum.   LCvR 23.1(a)(2)(i); LCvR 23.1(a)(2)(iv).

41.    The particular members of the PRMG Class are capable of being described without difficult managerial or administrative problems.  The members of the PRMG Class are also readily

identifiable from the information and records in the possession or control of the Defendant or its affiliates and agents and from public records.  PRMG is required under Federal laws to maintain this information for the entire class period.  *See* e.g. 12 C.F.R. § 1024.38(c).  LCvR 23.1(a)(2)(iv).

42.     The PRMG Class members are sufficiently numerous, exceeding more than fifty persons, such that individual joinder of all members is impractical.  This allegation is based on a data search of public records which identify that hundreds of public complaints have been filed against PRMG, and it services thousands of residential, mortgage loans throughout the United States as a matter of public records—including PACER records which identify bankruptcy cases.

43.     There are questions of law and fact common to the PRMG Class which predominate over any questions affecting only individual members of the PRMG Class and, in fact, the wrongs alleged against the Defendant by the PRMG Class members and the remedies sought by Named Plaintiffs and the PRMG Class against the Defendant are identical.  LCvR 23.1(a)(2)(iv).

44.     These common questions of law are fact for the PRMG Class members include but are not limited to (LCvR 23.1(a)(2)(iii)):

a.     whether PRMG has a legal duty to request the consumer reporting agencies to no report no derogatory credit reporting information about the Named Plaintiffs and PRMG Class members pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1);

b.     whether PRMG has a duty to furnish any information about the Named Plaintiffs and PRMG Class members to the credit reporting agencies upon receipt of their QWR/NOEs;

c.     whether PRMG's policy, practice, and procedure governing the suppression of disputed credit information in relation to the Named Plaintiff's and the PRMG Class members'

QWR/NOEs complies with its statutory duties (that are also incorporated into the contracts between it and the Plaintiff and PRMG Class members) stated in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1); and

       d.    whether PRMG's conduct fits a pattern and practice of 12 U.S.C.A. § 2605 violations (including violations of RESPA's implementing regulations).

45.    PRMG's defenses (which defenses are denied) would be typical or identical for each of the member of the PRMG Class and will be based on the same legal and factual theories. LCvR 23.1(a)(2)(iv).

46.    Certification of the PRMG Class under Fed.R.Civ.P. 23 is appropriate as to the members of the PRMG Class in that common questions predominate over any individual questions and a class action is superior for the fair and efficient adjudication of this controversy.  LCvR 23.1(a)(2)(iv).

47.    A class action will cause an orderly and expeditious administration of claims by the members of the PRMG Class and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured. LCvR 23.1(a)(2)(iv).

48.    The only individual questions concern the identification of members of the PRMG Class.  This information can be determined by a ministerial examination of public records or from the Defendant's business records or other sources, which are admissible as an exception to the hearsay rule and as a statement by a party.  Named Plaintiff does propose pursuant to Fed.R.Civ.P. 23(c)(4) for the Court to determine PRMG's liability for actual damages to the PRMG Class members so they may pursue those individual damages in separate actions as necessary or appropriate based on their individual circumstances.  LCvR 23.1(a)(2)(iv).

49.     The Named Plaintiff's claims are typical of the claims of the PRMG Class members pursuant to Fed.R.Civ.P. 23 since they are based on and arise out of identical facts constituting the wrongful conduct of the Defendant.

50.     Ntam will also fairly and adequately represent and protect the interests of the PRMG Class.  He is similarly situated with, and has suffered similar injuries as the PRMG Class he seeks to represent. He has also retained counsel experienced in consumer class actions including actions involving unlawful collection and mortgage servicing practices.  Ntam does not have any interests which might cause him not to vigorously prosecute this action or are otherwise adverse to the interests of the members of the PRMG Class. He feels he and the PRMG Class members have been wronged, wishes to obtain redress of the wrong, and wants the Defendant stopped from failing to comply with its mandatory duties stated in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  LCvR 23.1(a)(2)(ii).

51.     The PRMG Class members have suffered actual damages, losses, and harm similar those sustained by Ntam described above.  Ntam does seek an award of statutory damages on behalf of the PRMG Class as well as his own individual, actual damages under the claims asserted herein.  Ntam also seeks a determination of liability in favor of the PRMG Class members as to their individual, actual damages which can be pursued by the PRMG Class members on an individual basis in separate actions.  LCvR 23.1(a)(2)(iv).

### COUNT I:  VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
**("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41**
**(On behalf of the Named Plaintiff Individually and**
**on behalf of the PRMG Class)**

52.     The Named Plaintiff adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

53.    The Named Plaintiff and PRMG Class members are "borrowers" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

54.    PRMG is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41 in relation to the Named Plaintiff and PRMG Class members.

55.    Pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1), PRMG has legal duties to cease furnishing or providing adverse information to any consumer reporting agency regarding any payments that are subject to QWR/NOEs from the Named Plaintiff and PRMG Class members that it has received.

56.    The Named Plaintiff and the PRMG Class members each sent PRMG QWR/NOEs concerning disputed payments and sums claimed due by PRMG.

57.    PRMG received those written QWR/NOEs at the addresses it published for such correspondence.

58.    In contravention of its mandatory duties pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) and as part of its pattern, practice, and custom during the three years preceding the commencement of this action, PRMG did not suppress its credit reporting to the credit reporting agencies, including Experian, Equifax, and TransUnion, related to the period of times disputed by the Named Plaintiff's and the PRMG Class members' QWR/NOEs.

59.    Upon information and belief, based upon the experiences of the Named Plaintiff and the following facts and allegations, PRMG has a pattern and practice of noncompliance with the requirements of 12 U.S.C.A. § 2605 and its implementing regulations for borrowers like the Named Plaintiff and PRMG Class members:

    a.    As of May 24, 2021 there are 115 public complaints against PRMG in the CFPB's complaint database which concern or related to its mortgage servicing business and errors

related to the servicing, escrow and accounting practices subject to and related to its responsibilities pursuant to RESPA and its implementing regulations.

60.    The Named Plaintiff and each PRMG Class member suffered nominal damages of no less than $5.00 to take the time and expense to send their QWR/NOE to PRMG which entitled them to certain rights—including those stated in 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1)—which amount to actual damages since as part of PRMG's custom, practice, and policy it never seeks to suppress and negative, derogatory reporting to the credit reporting agencies when it receives a QWR/NOE.

**Count II:  VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA"), 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.41 (On behalf of the Ntam Individually)**

61.     The Named Plaintiff adopts by reference the factual allegations contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

62.    PRMG had duty of care under 12 U.S.C.A. § 2605, 12 C.F.R. § 1024.36, and 12 C.F.R. § 1024.35 to acknowledge in writing Plaintiff's Ntam QWE/NOE/RFI (including notices of error and requests for information) within five days and to respond to the Ntam QWE/NOE/RFI after conducting a reasonable investigation in writing within 30 days (unless it seeks an extension of not more than 15 days).

63.    The Ntam QWE/NOE/RFI described herein at ¶¶ 30-32 was sent to the address published by PRMG for such communications and PRMG received it.

64.    PRMG also had duty of care under 12 C.F.R. § 1024.36 and 12 C.F.R. § 1024.35 to conduct a reasonable investigation of the Ntam QWE/NOE/RFI and it failed to do any reasonable investigation as demonstrated *supra* and including its: (i) failure to provide the information

sought in the Ntam QWE/NOE/RFI and (ii) lack of any substantive response to Ntam QWE/NOE/RFI.

65.    As a direct and proximate result of these violations Plaintiff is entitled to his actual damages pursuant to 12 U.S.C.A. § 2605(f) described *supra*.

## PRAYER FOR RELIEF

I.    WHEREFORE, Named Plaintiff and PRMG Class members ask this Court to certify the PRMG Class pursuant to Fed.R.Civ.P. 23 and appoint the Named Plaintiff as class representatives and the undersigned counsel as Class Counsel;

II.    WHEREFORE, Named Plaintiff and PRMG Class members ask this Court to determine the issue of PRMG's liability to the PRMG Class members for awards of actual damages for its violations of 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) pursuant to 12 U.S.C.A. § 2605(f)(2)(A) and Fed.R.Civ.P. 23(c)(4) to permit the PRMG Class members to pursue their actual damages, if any, in separate actions but to determine liability in favor of the Named Plaintiff individually and award individual, actual damages in this action to him in the sum of $50,000 (for his claims under Counts I & II);

III.    WHEREFORE, Named Plaintiff and PRMG Class members ask this Court to determine the issue of PRMG's liability to the Named Plaintiff and PRMG Class members for an award of statutory damages available pursuant to  awards of actual damages for its violations of 12 U.S.C.A. §

21

2605(e)(3) and 12 C.F.R. § 1024.35(i)(1) pursuant to 12 U.S.C.A. § 2605(f)(2)(B)(i) in the sum of $1,000,000 since upon information and belief PRMG's net worth exceeds $100,000,000;

IV. WHEREFORE, Named Plaintiff and PRMG Class members ask this Court to award to costs and attorney fees to them and their undersigned counsel pursuant to 12 U.S.C.A. § 2605(f)(3);

V. WHEREFORE, Named Plaintiffs request the Court provide such other or further relief as the Court deems appropriate including attorney fees and costs in relation to Count of this Complaint.


Respectfully submitted,

*//s//Phillip R. Robinson*
Phillip R. Robinson
Bar No. MD27824
Consumer Law Center LLC
10125 Colesville Road, Suite 378
Silver Spring, MD  20901
Phone (301) 448-1304