IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTOR NTAM**, <br><br>*On behalf of himself individually and on behalf of two classes of Similarly Situated Persons.* <br><br>Plaintiff, <br><br>v. <br><br>**PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC., CENLAR FSB** <br><br>Defendants. | Civil Case: 1:21-cv-01583-JMC |

**DEFENDANTS PARAMOUNT RESIDENTIAL MORTGAGE GROUP, INC. AND CENLAR FSB'S MOTION TO EXCLUDE PORTIONS OF REBUTTAL EXPERT THOMAS TARTER'S REPORT AND PRECLUDE CERTAIN TESTIMONY**

Defendants Paramount Residential Mortgage Group, Inc. ("PRMG") and Cenlar FSB ("Cenlar") (collectively "Defendants") move to exclude portions of Plaintiff Victor Ntam's rebuttal expert Thomas Tarter's report and preclude testimony that is not in rebuttal to Defendants' expert opinions.

**INTRODUCTION**

Plaintiff's Rule 26(a)(2) Expert Disclosures were due April 1, 2022. Dkt. 13. Plaintiff did not disclose an expert by April 1, 2022, nor did Plaintiff seek to extend the time to serve his initial expert disclosures. On July 1, 2022, Defendants timely disclosed their expert,[1] John Ulzheimer, and served his expert report ("Ulzheimer Report"). Declaration of Regina J. McClendon ("McClendon Decl."), Ex. 1. The Ulzheimer Report expressed two discrete opinions:

---

[1] PRMG timely sought and received an extension of time from the Court to extend its expert disclosure deadline to July 1, 2022.

1. PRMG received multiple, frivolous, credit repair company initiated dispute communications via the credit reporting agencies indicating the Plaintiff was 1) the victim of identity theft and, 2) the PRMG account did not belong to the Plaintiff and was opened as a result of identity theft and, 3) the PRMG credit inquiry was caused by fraud. PRMG never received an authentic credit bureau dispute indicating the late payments on the Plaintiff's PRMG account were incorrect. And, in response to Plaintiff's Qualified Written Request, PRMG did, in fact, suppress their credit reporting for the subsequent 60 days.

2. In my expert opinion, there is no evidence Plaintiff experienced the credit difficulties as alleged.

See McClendon Decl., Ex. 1, p. 15, 19. In sum, Mr. Ulzheimer opined that Plaintiff never submitted an authentic credit dispute indicating the late payments reported on his PRMG account were incorrect, PRMG suppressed its credit reporting in the 60 days after receiving Plaintiff's QWR, and Plaintiff did not suffer the credit damages alleged in his complaint. Mr. Ulzheimer did not opine as to:

- the accuracy of Defendants' credit reporting;

- the sufficiency of Defendants' policies and procedures;

- the adequacy of letters from PRMG advising Plaintiff his loan number changed and directing him to send payments to a different address;

- the sufficiency of Defendants' investigation and response to Plaintiff's QWR; or

- whether Defendants properly applied Plaintiff's monthly mortgage loan payments under TILA.

On August 8, 2022, Plaintiff disclosed his rebuttal expert, Thomas A. Tarter, and served his rebuttal expert report ("Tarter Report.") McClendon Decl., Ex. 2. Though the Tarter Report is styled as a rebuttal report, Mr. Tarter also offers numerous additional opinions far outside the bounds of rebuttal to Mr. Ulzheimer's report. He even admits in his report that his opinions "were omitted by the Ulzheimer Report" and that there are "significant differences between the scope and orientation of my Report as compared to Mr. Ulzheimer's Report and his testimony." McClendon Decl., Ex. 2, p. 3. For example, Mr. Tarter also opined that:

- Plaintiff's QWR provided sufficient information for Defendants to identify the missing monthly mortgage payment and apply it to his loan (McClendon Decl., Ex. 2, p. 20 n.14);

- Plaintiff's explanation regarding his failure to occupy the subject property within 60 days as required by his loan documents was "plausible" and "commercially reasonable" (*id.*, pp. 22-23);

- Plaintiff suffered emotional distress damages (*id.*, p. 26);

- PRMG's and Cenlar's investigations and the information they furnished CRAs was flawed because it was inaccurate and not timely submitted (*id.*, p. 28);

- Creditor Grantors routinely obtain information from CRAs on consumers for clients, like mortgage lender [sic] who then utilize that information as part of their credit decision making process (*id.*, p. 31);

- Credit furnishers and credit reporters are required to have procedures to prevent the communication of inaccurate credit information (*id.*, p. 32); and

- PRMG/Cenlar's delay in timely posting Mr. Ntam's payments and updating inaccurate tradeline information furnished CRAs on Mr. Ntam's loan was unreasonable and in conscious disregard of supporting information (*id.*, pp. 33-34).

As such, Mr. Tarter is not a true rebuttal expert witness because his testimony does not "solely contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Plaintiff's attempt to surreptitiously introduce novel expert witness opinions after failing to timely disclose an initial expert is therefore improper and the Court should exclude the portions of the Tarter Report and any testimony that is not in rebuttal to the Ulzheimer Report, pursuant to Fed. R. Civ. P. 37(c)(1).

## ARGUMENT

I. **The Tarter Report is not a proper rebuttal report.**

    A. **The Tarter Report does not solely contradict or rebut the Ulzheimer Report.**

The Tarter Report is not a proper rebuttal report because Mr. Tarter's proposed testimony does not solely contradict or rebut the Ulzheimer Report. *See generally*, McClendon Decl., Ex. 2. For example, Mr. Tarter opined that:

- Plaintiff's QWR provided sufficient information for Defendants to identify the missing monthly mortgage payment and apply it to his loan (McClendon Decl., Ex. 2, p. 20 n.14);

- Plaintiff's explanation regarding his failure to occupy the subject property within 60 days as required by his loan documents was "plausible" and "commercially reasonable" (*id.*, pp. 22-23);

- Plaintiff suffered emotional distress damages (*id.*, p. 26);

- PRMG's and Cenlar's investigations and the information they furnished CRAs was flawed because it was inaccurate and not timely submitted (*id.*, p. 28);

- Creditor Grantors routinely obtain information from CRAs on consumers for clients, like mortgage lender [sic] who then utilize that information as part of their credit decision making process (*id.*, p. 31);

- Credit furnishers and credit reporters are required to have procedures to prevent the communication of inaccurate credit information (*id.*, p. 32); and

- PRMG/Cenlar's delay in timely posting Mr. Ntam's payments and updating inaccurate tradeline information furnished CRAs on Mr. Ntam's loan was unreasonable and in conscious disregard of supporting information (*id.*, pp. 33-34).

None of these opinions were discussed in the Ulzheimer Report. *Id.* at 28-34; *see also generally* McClendon Decl., Ex. 1. Indeed, Mr. Tarter readily conceded throughout his deposition that Mr. Ulzheimer did not render an opinion on the majority of opinions he proffered:

- Q: And so just to recap a few of the things you mentioned there, Cenlar, the subservicing agreement between Cenlar and PRMG, the operational role of a servicer, the OCC consent order, payment processing, Mr. Ulzheimer didn't opine on any of those items in his report; correct?

  A: That was the sense. He never mentioned Cenlar or the check processing.

  Tarter Dep. Tr. 44:4 – 44:11.

- Q: To your knowledge of Mr. Ulzheimer's report, did he opine on whether PRMG investigated Mr. Ntam's credit dispute claims properly?

  A: No.

  Tarter Dep. Tr. 48:21 – 48:24.

- Q: And again, Mr. Ulzheimer did not opine on the policies and procedures of PRMG and Cenlar in his report; correct?

A: Not that I recollect, sir.

Tarter Dep. Tr. 49:5 – 49:8.

- Q: Did Mr. Ulzheimer opine on the accuracy of PRMG and Cenlar's reporting to the CRAs?

  A: No.

  Tarter Dep. Tr. 49:15 – 49:18.

- Q: And to your recollection, did Mr. Ulzheimer opine on whether PRMG's and Cenlar's investigation was accurate or appropriate?

  A: No. I thought he overlooked that.

  Tarter Dep. Tr. 166:22 – 166:25.

- Q: And to your recollection, did Mr. Ulzheimer testify as to whether PRMG's and Cenlar's credit reporting to the CRAs was accurate or timely?

  A: At this point I don't recollect that he did.

  Tarter Dep. Tr. 167:1 – 167:4.

- Q: Did Mr. Ulzheimer opine on whether Cenlar properly rejected that [July 2021] payment or not?

  A: First of all, my recollection is Mr. Ulzheimer never mentioned Cenlar in his report. Maybe I'm mistaken, but I don't recollect him having Cenlar mentioned in his report.

  Tarter Dep. Tr. 171:4 – 171:9.

See McClendon Decl., Ex. 3, Tarter Deposition Transcript Excerpts.

Federal Rule of Civil Procedure 26 defines rebuttal expert as one whose opinions are "intended **solely** to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). It "cannot be used to advance new arguments or address new evidence." Blake v. Securitas Sec. Services, Inc., 292 F.R.D. 15, 17 (D.D.C. 2013) (citations omitted). "By contrast, an affirmative expert serves to establish a party's

case in chief." *Spring Creek Exploration & Production Company, LLC v. Hess Bakken Investment II, LLC*, 2016 WL 1597529 at *3 (D. Col. Apr. 21, 2016).

In determining whether rebuttal expert testimony is admissible, "the Court looks to whether the rebuttal testimony goes 'directly to refuting' a claim asserted by the opposing party's witness." *United States v. Philip Morris USA Inc.*, 2022 WL 1101730 at *5 (D.D.C. Apr. 13, 2022) (*citing United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996). "Rebuttal testimony is proper if it 'explain[s], repel[s], counteract[s], or disprove[s] evidence of the adverse party." *Id.* If a party's rebuttal expert's testimony "in fact introduces evidence beyond the scope of the opposing party's initial expert testimony, the rebuttal expert 'may be viewed as an initial expert who was not timely designated and whose testimony may be struck by the Court for violating Rule 26(a).'" *Id.* (*citing Blake*, *supra*, 292 F.R.D. at 17 and 18.). "Thus, in evaluating the admissibility of rebuttal expert testimony, the Court looks to whether the rebuttal testimony goes 'directly to refuting' a claim asserted by the opposing party's witness." *Id.; see also*, *Laflamme v. Safeway, Inc.*, 2010 WL 3522378 at *3 (D. Nev. Sept. 2, 2010) ("As long as [a rebuttal expert witness] speak[s] to the same subject matter the initial experts addressed and do not introduce novel arguments, their testimony is proper under Federal Rule of Civil Procedure 26(a)(2)(C)…").

The Tarter Report goes beyond a proper rebuttal report because it does not merely contradict, explain, repel, counter, or disprove the opinions set forth in the Ulzheimer Report. Instead, Mr. Tarter introduces many of his own, new theories outlined above, such as the sufficiency of Plaintiff's QWR and Defendants' investigation and response thereto under RESPA; the adequacy of Defendants' policies and procedures regarding RESPA and TILA; and Defendants' compliance with TILA. New theories are not appropriate in a rebuttal. *See Spring Creek Exploration, supra*, 2016 WL 1597529 at *3 ("[R]ebuttal experts cannot put forth their own

6

theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." (citation omitted)).

Because the Tarter Report does not **solely** contradict or rebut Ulzheimer Report, the Court should strike the portions of the Tarter Report containing new opinions outlined above at Section I(A), p. 4, and preclude Mr. Tarter from testifying as to those opinions.

### B. Preclusion of Plaintiff's belated disclosure of Mr. Tarter and his initial expert opinions is proper.

If Plaintiff seeks to belatedly offer Mr. Tarter's opinions as his initial expert disclosure, the Court should reject this attempt. Fed. R. Civ. P. 37(c)(1) provides in relevant part that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

*See also Crowder v. Fuddruckers, Inc.,* 2006 WL 8449970 at *2 (D.D.C. Apr. 20, 2006). The sanction for failure to timely disclose an expert is self-executing. *Williams v. Aviles*, 2022 WL 2643559 at *3 (D.D.C. July 8, 2022). "[T]he overwhelming weight of authority is that preclusion is *required* and *mandatory* absent some unusual or extenuating circumstances – that is, a substantial justification." *Blake*, *supra*, 292 F.R.D. at 19 (*citing Elion v. Jackson*, 2006 WL 2583694 at *1 (D.D.C. Sept. 8, 2006) (emphasis in original; quotation marks omitted)). It is "[t]he burden…on the party facing sanctions to prove that its violation was either substantially justified or harmless." *Williams*, *supra*, 2022 WL 2643559 at *3 (citation omitted); *accord Antoine v. J.P. Morgan Chase Bank*, 2009 WL 5842054 at *2 (D.D.C. Aug. 13, 2009) (finding no substantial justification where counsel did not demonstrate diligence in meeting Scheduling Order deadline or seeking an extension prior to the deadline to disclose initial expert expiring).

Plaintiff cannot demonstrate substantial justification for his failure to timely and properly disclose Mr. Tarter and his initial expert testimony. The Scheduling Order set Plaintiff's Rule 26(a)(2) expert disclosure deadline for April 1, 2022. Dkt. 13. Plaintiff was aware of this April 1, 2022 deadline, given he agreed to it in the Joint Statement of the Parties Pursuant to Local Civil Rule 16.3. Dkt. 12 at p. 4. Plaintiff did not seek to extend his initial expert deadline and in fact initially declined to consent to Defendants' motion to extend their expert disclosure deadline, though he ultimately did not file a response in opposition to Defendants' motion. Nor did Plaintiff seek relief from the Court for his failure to designate, despite seeking the Court's permission to extend the class certification discovery deadline. *See* Dkt. 45. Further, the information contained in the additional "rebuttal opinions" heading, aside from one reference to a single response from a deposition, the Tarter Report does not reference a single document, deposition, or discovery response, and thus Plaintiff cannot claim that the information was unavailable to Mr. Tarter as of the April 1, 2022 deadline. Indeed, Plaintiff can offer no justification demonstrating that the late initial expert report is excusable. As such, Plaintiff's improper disclosure of Mr. Tarter's initial expert opinions is not substantially justified.

Further, Plaintiff's belated disclosure of Mr. Tarter and his initial expert opinions is not harmless. Again, "rebuttal testimony 'cannot be used to advance new arguments or new evidence'…such a rule 'prevent[s] unfair surprise at trial' and 'permit[s] the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial." *Philip Morris USA Inc., supra*, 2022 WL 1101730 at *4 (citation omitted); *see also Antoine*, *supra*, 2009 WL 5842054 at *3 (finding failure to produce initial expert report timely not harmless as it denied defendant opportunity to adequate time to prepare and rebut initial expert and "complete the discovery process without the benefit of full disclosures regarding

8

experts, a benefit to which [it] was entitled."). The Tarter Report proffers numerous additional opinions that advance new arguments and theories as outlined above. *See* Section I(A), p. 4. Tarter's inclusion of these new opinions for the first time in the rebuttal report deprived Defendants of the ability to prepare a rebuttal, or address those opinions in the Ulzheimer report. Defendants are further prejudiced as they were deprived of the ability to prepare properly for the 23 depositions taken after Plaintiff's April 1, 2022 expert disclosure deadline and before the service of Tarter's report on August 8, 2022, such as the second session of Plaintiff's deposition, the CRA depositions, the deposition of the Sam Dee a/k/a Solomon Dwek, owner of the credit repair organization retained by Plaintiff, and most notably, the deposition of Mr. Ulzheimer. Given that phase one discovery closed August 19, 2022, Plaintiff's belated disclosure has severely prejudiced Defendants' ability to obtain necessary discovery in this matter. As a result, the Court should strike Plaintiff's belated initial expert disclosure opinions from the Tarter Report and preclude Mr. Tarter from testifying as to those opinions.

## CERTIFICATE OF COMPLIANCE WITH LCvR 7(m)

The undersigned certifies that she discussed this motion by telephone with counsel for Plaintiff on December 12, 2022 in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. On the phone call, Plaintiff's counsel stated an opposition was likely. Following the call, Defendants' counsel provided Plaintiff's counsel with copies of the Ulzheimer and Tarter reports and a list of the testimony that Defendants seek to strike. Plaintiff's counsel advised on December 15, 2022 that Plaintiff is unable to determine his position prior to review of Defendants' motion.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to exclude portions of the Tarter Report should be granted. Specifically, the Court should exclude the opinions identified in Section I(A), p. 4 above, and preclude any testimony regarding the opinions set forth within these pages.

DATED: December 19, 2022

Respectfully submitted,

/s/ *Regina J. McClendon*
Thomas J. Cunningham
Bar No. FL0090
tcunningham@lockelord.com
Dale A. Evans Jr.
Bar No. FL0091
dale.evans@lockelord.com
Locke Lord LLP
777 South Flagler Drive
East Tower, Suite 215
West Palm Beach, FL 33458
Phone: (561) 833-7700

Regina J. McClendon
Bar No. CA00112
rmcclendon@lockelord.com
Locke Lord LLP
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Phone: (415) 318-8810

Carlos Marin
Bar No. IL0103
carlos.marin@lockelord.com
Locke Lord LLP
111 S. Wacker Dr.
Chicago, IL 60606
Phone: (312) 443-1837